## PHYSICIAN SERVICES AGREEMENT

THIS PHYSICIAN SERVICES AGREEMENT (this "Agreement") is entered into and effective as of __12/11__, 2017 ("Effective Date"), by and between **Kentucky Addiction Centers, LLC**, a Kentucky limited liability company ("KAC"), and Dr. Jose Alzadon ("Physician").

### WITNESSETH:

**WHEREAS**, KAC provides behavioral health and substance abuse counseling services patients;

**WHEREAS**, Physician is a licensed physician in the State of Kentucky; and

**WHEREAS**, KAC wishes to engage Physician to provide, and Physician wishes to provide, medical addiction and recovery healthcare services for KAC in accordance with the terms and conditions set forth herein.

**THEREFORE**, in consideration of the mutual promises and agreements set forth herein, the parties hereto agree to the following:

1. **Services.** Throughout the Term of this Agreement, Physician will provide mutually agreeable medical addiction and recovery healthcare services including, but not limited to, consultations, evaluation, treatment, laboratory test ordering, and medication prescribing as may be appropriate and necessary in the professional judgment of the Physician, and related administrative services and supervision of midlevel providers ("Services") pursuant to a mutually agreed-upon schedule and at mutually agreed-upon locations. Physician will perform the Services hereunder in a manner consistent with the standards of professional ethics and practice and in accordance with all requirements of applicable professional associations, commercial and government third party payors, KAC policies and procedures of which Physician is made aware and local, state and federal laws. At all times during the Term of this Agreement, Physician will use reasonable care in making medical decisions and exercising his/her independent medical judgment in the rendering of professional medical services to patients. Throughout the Term of this Agreement, Physician shall provide addiction treatment and recovery healthcare and medical services through KAC and Physician shall update Physician's contact information on state and federal provider databases related to Services.

2. **Qualifications of Physician.** Physician represents and warrants to KAC that Physician: (i) is duly licensed without limitation to practice medicine in the State of Kentucky and Physician's license to practice medicine in the State of Kentucky has never been revoked, suspended, limited or put on probation; (ii) has never been convicted of, or pled nolo contendere to, any misdemeanor related directly or indirectly to the practice of medicine; (iii) has never been convicted of, or pled nolo contendere to, a felony of any kind; (iv) has never been debarred, excluded or suspended from the federal or state health care program, or if previously debarred, suspended or excluded, Physician has been fully reinstated, in which event Physician will provide to KAC written proof of such reinstatement and such other information KAC may reasonably request and require describing the reasons for such prior debarment, suspension or exclusion; (v) has never had his or her medical staff privileges revoked or suspended at any hospital or facility; (vi) is not party to any contract, agreement or understanding that would prohibit or otherwise restrict Physician's performance of the Services; (vii) Physician has a DEA license and Kentucky license to prescribe controlled substances; and (viii) Physician has obtained DATA waiver authorization from the DEA to treat the number of patients disclosed to KAC in writing. Physician understands that KAC is relying on all of Physician's representations, including but not limited to those in this Section, in entering into this Agreement. The representations in this Section shall remain true on a current basis throughout the term of this Agreement. Physician shall notify KAC in writing within three

KAC Physician Services Agreement
CONFIDENTIAL

1

Physician JA    KAC WB

(31) days after Physician has actual knowledge of any of the following events throughout the term of this Agreement: (a) any of the representations made above in this Section become untrue; (b) a malpractice proceeding or any similar legal proceeding against Physician is seriously threatened or filed against Physician in any federal, state, or local court of law; (c) Physician becomes the subject of a disciplinary proceeding or action before the Kentucky Board of Medicine or the licensing board of any state in which Physician has a license, the subject of any investigation, sanction, or similar action by a peer review organization, or the subject of any other audit or similar proceeding by any federal, state, or local agency, or any Medicare carrier or intermediary; (d) an event occurs that substantially interrupts all or a material portion of Physician's professional practice or that materially adversely affects Physician's ability to render Services hereunder; or (e) an event occurs that may have risk management or legal ramifications affecting Physician and KAC.

3. **Compensation**. As consideration for the Services provided by Physician, KAC shall pay to Physician compensation as described in Exhibit A of this Agreement and in accordance with KAC's reasonable payment policies and procedures. The parties agree that this Agreement is an arms-length transaction for fair market value. The parties further agree that the benefits to each other under this Agreement do not require, are not payment for, and are not in any way contingent upon, the referral, admission, or any other arrangement for the provision of any item or service offered by either party or its affiliates. The parties acknowledge and agree that the Services and Compensation terms set forth herein reflect the agreement of the parties based on the facts and circumstances in existence as of the Effective Date of this Agreement. If a material change has occurred, including but not limited to, significant changes in policies of commercial or government third party payors or changes in applicable federal, state or local laws and regulations the parties shall execute an amendment to Exhibit A.

4. **Fees and Billing**. KAC shall have the exclusive right to bill for Services rendered by Physician pursuant to this Agreement. At the request of KAC, Physician shall participate in and allow KAC to accept assignment from commercial and government third party payors in which KAC participates or in which KAC is an out-of-network provider. All fees, compensation, monies and other things of value received or realized as a result of the rendition of Services by Physician, including but not limited to fees and compensation for Services rendered to patients and all income generated by Physician through consultation, shall belong to KAC. Physician shall cooperate and assist KAC in billing and collecting such fees by providing requested information in a timely manner. This Section shall survive expiration or termination of this Agreement for the period of time necessary for all collections to be received for Services rendered hereunder by Physician.

5. **Records**. Physician shall timely complete all medical and billing records reasonably requested by KAC and/or third party payors. All patient records concerning patients cared for by Physician pursuant to this Agreement belong to and will remain the exclusive property of KAC. Notwithstanding the foregoing, Physician will have access to all records which relate to Services provided by Physician hereunder at reasonable times and upon reasonable notice.

6. **Term**. This Agreement shall commence on the Effective Date and shall continue in force and effect for a period of one (1) year ("Initial Term"), unless earlier terminated pursuant to the terms of this Agreement. The Term of this Agreement shall automatically renew upon the same terms and conditions for additional one-year terms ("Renewal Terms") unless either party provides the with written notice of its intent not to renew at least ninety (90) days prior to the expiration of the then current Term. The "Term" as used herein shall mean the Initial Term and all Renewal Terms.

7. **Termination**. This Agreement may be terminated by: (a) mutual written agreement entered into by the parties at any time, upon the terms and time stipulated therein; (b) Physician, at any time without cause by giving KAC written notice of its intent to terminate at least ninety (90) days prior to the effective

date of termination; (c) KAC, at any time without cause by giving Physician written notice of its intent to terminate at least ninety (90) days prior to the effective date of termination; (d) either party, upon thirty (30) days' prior written notice to the other party if the other party fails in any material respect to fulfill its obligations pursuant to this Agreement and such failure is not cured to the non-breaching party's reasonable satisfaction within thirty (30) days after such written notice; or (e) KAC immediately upon notice to Physician in the event that any of the representations made by Physician pursuant to Section 2 above are not true and accurate at any point during the term of this Agreement. If Physician dies during the term of this Agreement, this Agreement shall automatically terminate as of the date of Physician's death. Except as otherwise set forth herein, upon termination of this Agreement, neither party shall have any further obligation hereunder except for obligations accruing prior to the date of termination. The above notwithstanding, KAC may withhold any amounts it owes to Physician until Physician completes and signs all documents necessary for proper payment to KAC for Services rendered by Physician under this Agreement, including but not limited to patient chart documentation and appropriate notification of third party payers, and KAC may deduct, from any amount it owes Physician, any amounts that Physician owes KAC. Following termination of this Agreement, Physician agrees to cooperate with KAC in completion of all medical records or other documents or reports related to Services rendered prior to termination and cooperate with KAC with respect to any action filed on behalf of or against KAC or Physician and otherwise fulfill all responsibilities under this Agreement for Services rendered prior to termination.

8. **Insurance**. Physician shall procure and pay the premiums on a professional liability insurance policy, including tail coverage, covering Physician's provision of Services hereunder with minimum coverage limits of One Million and 00/100 Dollars ($1,000,000.00) per claim and Three Million and 00/100 Dollars ($3,000,000.00) in the annual aggregate. This Section shall survive termination or expiration of this Agreement.

9. **Indemnification**. Each party ("Indemnifying Party") shall defend, indemnify and hold harmless the other party, its directors, officers, employees, agents, representatives, successors, assigns and subcontractors (each, an "Indemnified Party") against all actions, claims, losses, damages, costs and expenses including but not limited to attorney's fees ("Costs"), directly or indirectly as a result of negligence, intentional or unintentional acts or acts of omission of the Indemnifying Party in connection with the Indemnifying Party's, its directors', officers', employees', agents', representatives', successors', assigns', and subcontractors' obligations under this Agreement, except to the extent covered by insurance or caused by the gross negligence or willful misconduct of the Indemnified Party. In the event of an audit and claim of over-payment by a third-party payor pertaining to Physician's performance of Services hereunder including services "incident to" Physician's Services, Physician shall be responsible to reimburse KAC the total cost of the audit (including payor refunds and attorney fees and costs), provided that the total cost of the audit shall not include any reimbursement disallowance related to KAC's administrative or clerical error. Except as otherwise set forth herein, the amount of reimbursement disallowed for services provided by, "incident to," or ordered by Physician shall include any disallowance related to lack of documentation or screening for which Physician is responsible, lack of medical necessity, or any other reason related to the responsibilities of Physician. This Section shall survive termination or expiration of this Agreement.

10. **Independent Contractors**. It is agreed that Physician is an independent contractor and not an employee of KAC. This Agreement shall not be construed to create any form of employment relationship or any legal association which would impose liability upon one party for the act or failure to act of the other party. Physician will not participate in, and is not entitled to or eligible for, any KAC-provided employee benefits, including any workers' compensation, insurance, medical leave payments, pension, 401(k), or unemployment insurance.

11. **Covenant Not to Compete, Interfere or Solicit.** Physician agrees that during the Term of this Agreement and for a period of two (2) years after its termination, cancellation or natural expiration, Physician will not on Physician's own behalf or on behalf of any other person, organization or entity, individually or collectively, in any fashion, form or manner, attempt to interfere with the business of KAC, either directly or indirectly, in any manner including, but not limited to: (a) interacting with KAC's patients or potential patients in an attempt to disrupt or discontinue, or solicit, entice, or induce to discontinue any facet of their current or future relationship with KAC; (b) interacting with KAC's employees, agents, contractors and/or representatives in an attempt to induce, solicit or entice them to discontinue or limit their relationship with KAC; (c) interacting with any facility or location where KAC or any other Physician of KAC does business in attempt to induce, solicit, or entice such facility to disrupt or discontinue any facet of its relationship with KAC or such other Physician of KAC; and/or (d) interacting with any person, physician, physician group or entity so as to divulge any information about KAC's business. During the Term of this Agreement Physician shall not, unless otherwise agreed upon between the parties in writing, undertake professional medical services (e.g. locum tenens, consulting, etc.) for any third party KAC competitor or have any substantial interest in or employment or contractual relationship with any KAC competitor person or entity within a twenty-five (25) mile radius of any facility or location where KAC does business. Physician acknowledges that the restrictions contained in this Section are reasonable and necessary for the reasonable protection of the business interests of KAC. Physician further acknowledges that KAC would not have entered into this Agreement, but for these restrictions which have been deemed necessary to protect a legitimate business interest. However, if any court of appropriate jurisdiction shall determine that such provisions are unenforceable as to scope, territory or period of time, such provisions shall remain in force for such modified scope, territory, or period of time as the court may determine to be reasonable under the circumstances. If any provision is held invalid, void or unenforceable, the remaining provisions shall continue in full force and effect without being impaired or invalidated. This provision may be enforced through injunctive relief by any court of competent jurisdiction; however, the issuance of an injunction shall not in any manner prevent KAC from seeking compensatory damages in addition thereto, including reasonable attorney's fees, if such damages result from a violation of these provisions. This Section shall survive termination or expiration of this Agreement.

12. **Confidentiality.** Physician acknowledges and agrees that it shall become privy to certain proprietary and/or confidential information of KAC, and Physician agrees it shall maintain confidentiality of all proprietary and/or confidential information related to KAC's operations, including, without limitation: policies, procedures, business practices, strategic plans, patient lists, financial information, contracts with physicians, third parties and payors, and any other information which may reasonably be deemed to be confidential in nature. Physician may disclose such matters to the extent that disclosure is required (a) in the course of the relationship with KAC, or (b) by a court or governmental agency of competent jurisdiction. Notwithstanding anything to the contrary set forth elsewhere herein, "proprietary and/or confidential information" shall not include any information of any kind which is: (i) in the public domain or becomes available in the public domain through no action of Physician; (ii) already known by Physician; or (iii) disclosed to Physician by a person or entity not known by Physician to be under an obligation of confidentiality to KAC. The parties agree that the terms and conditions of this Agreement shall remain confidential. Neither party shall distribute this Agreement or any part thereof or reveal any of the terms of this Agreement to parties other than their legal and financial advisors, and as necessary, their employees and agents, or as may be otherwise required by law. This Section shall survive termination or expiration of this Agreement.

13. **Compliance with Laws and Regulations.** The parties in good faith believe that this Agreement fully complies with applicable federal and state laws, regulations and rules ("Laws"). The parties agree that this Agreement is an arms-length transaction for fair market value. The parties further agree that the benefits to each other under this Agreement do not require, are not payment for, and are not in any way

contingent upon, the referral, admission, or any other arrangement for the provision of any item or service offered by either party or its affiliates. Should a party to this Agreement be notified by any governmental agency or its counsel that a change in the Law including, but not limited to, the Anti-kickback Statute, the Stark Law, the Health Insurance Portability and Accountability Act ("HIPAA"), or the regulations promulgated thereunder, causes the parties' performance under this Agreement to be in violation of these laws or creates a moderate to substantial risk of violation of these laws, such party shall notify the other, and the parties shall mutually attempt to amend this Agreement in all respects necessary to comply with such laws cited herein. If such amendment is not in compliance with applicable legal requirements in the written opinion of counsel for either party to this Agreement, or if the parties cannot agree on an alternative acceptable arrangement, then this Agreement may be terminated by either party upon the delivery of written notice to the other party thirty (30) days prior to the date of termination and all of the rights and obligations of the parties hereunder shall cease and this Agreement shall become null and void.

14. **Notices**. All notices, requests, demands and other communications of any kind which either party may be required or desires to give or serve upon the other party, shall be made in writing and must be delivered in person, by recognized overnight courier service, or sent by United States mail, first-class, registered or certified, postage prepaid, return receipt requested, and shall be deemed to have been given when mailed or hand delivered to the address listed below unless notice is given otherwise:

Physician:
Dr. Jose Alzadon, MD
_____
_____

KAC: Kentucky Addiction Centers, LLC
Attn: Matt Bobbitt
2701 Teakwood
College Station TX 77845

15. **Entire Agreement; Modification**. This Agreement, including all exhibits, attachments, and appendices referenced herein, constitutes the entire understanding and agreement between the parties concerning the subject matter hereof, and supersedes all prior negotiations, agreements, and understandings between the parties, whether oral or in writing, concerning the subject matter hereof. This Agreement may only be modified, altered, amended, revised or extended by a written document signed by the parties hereto.

16. **Assignment**. Physician may not assign, subcontract, delegate or otherwise transfer this Agreement or any of Physician's rights or obligations hereunder, nor may Physician contract with third parties to perform any of Physician's obligations hereunder except as contemplated in this Agreement, without KAC's prior written consent.

17. **Severability**. If any part of this Agreement shall be determined to be invalid, illegal, or unenforceable by any valid act of Congress or act of any state legislature or by any regulation duly promulgated by the United States or a state acting in accordance with the Law, or declared null and void by any court of competent jurisdiction, then such part shall be reformed, if possible, to conform to the Law and, in any event, the remaining parts of this Agreement shall be fully effective and operative insofar as reasonably possible.

18. **Waiver of Breach**. Any waiver of a breach of any provision of this Agreement shall not: (a) be deemed effective unless in writing and signed by the party against whom enforcement of the waiver is sought; or (b) operate as, or be construed to be, a waiver of any subsequent breach of the same or other provisions hereof.

KAC Physician Services Agreement
CONFIDENTIAL

5

Physician _JA_   KAC _MB_

19. **Third Party Rights.** The covenants, undertakings and agreements set forth in this Agreement are solely for the benefit of, and are enforceable only by, the parties hereto and their respective successors and permitted assigns. No person or entity, except the parties shall be beneficiaries of any kind of the terms to this Agreement.

20. **Governing Law; Venue.** This Agreement shall be construed and governed by the laws of the State of Kentucky, without regard to its conflict of laws provisions. Each party irrevocably agrees that any claim brought by it in any way arising out of this Agreement must be brought solely and exclusively in state or federal courts located in Winchester Kentucky and each party irrevocably accepts and submits to the sole and exclusive jurisdiction of each of the aforesaid courts in personam, generally and unconditionally with respect to any action, suit, or proceeding brought by it or against it by the other party.

21. **Headings.** The headings and subheadings in this Agreement are inserted for convenience of reference only and shall not affect the meaning or interpretation of this Agreement.

22. **Counterparts.** This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the day and year first written.

| By PHYSICIAN | | By Kentucky Addiction Centers, LLC | |
|---|---|---|---|
| Printed Name: | Jose Alzaleon | Printed Name: | Matt Boggs |
| Date: | 12/11/17 | Date: | 12/11/17 |
| Signature: | /s/ Jose Alzaleon | Signature: | /s/ MB |

## EXHIBIT A
## COMPENSATION

As consideration for the Services provided by Physician, KAC shall pay to Physician compensation in an amount equal to Thirty Dollars ($30) per patient encounter, in accordance with KAC's reasonable payment policies and procedures.