**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION – LEXINGTON**

**CRIMINAL ACTION NO. 5:23-cr-9-KKC-MAS**

**UNITED STATES OF AMERICA** **PLAINTIFF**

**v.**

**UNITED STATES' OPPOSITION TO DEFENDANT JOSE ALZADON'S MOTION FOR BOND PENDING APPEAL**

**JOSE ALZADON, M.D.,**
**MICHAEL BREGENZER, AND**
**BARBIE VANHOOSE** **DEFENDANTS**

# TABLE OF CONTENTS


INTRODUCTION ........ 1

LEGAL STANDARD ........ 1

ARGUMENT ........ 3

I. Alzadon Does Not Raise Substantial Questions of Law or Fact ........ 3

A. Alzadon's Arguments Regarding Defense Witness Testimony Do Not Raise a Substantial Question Likely to Result in Reversal or a New Trial 4

i. Krueger and Elrod Were Entitled to Invoke Their Fifth Amendment Rights ........ 4

ii. The Government Properly Raised These Issues Before This Court 5

B. Alzadon's Arguments Regarding Sufficiency of the Evidence Do Not Raise Substantial Questions of Law or Fact ........ 7

C. Any Objections Alzadon May Have Regarding the Jury Instructions Do Not Raise Substantial Questions of Law ........ 7

II. Alzadon Does Not Present "Exceptional Reasons" Warranting His Release ........ 9

CONCLUSION ........ 12

## INTRODUCTION

On March 20, 2025, following a three-week trial, a jury found Defendant José Alzadon guilty of: (i) conspiring to commit health care fraud (18 U.S.C. § 1349); (ii) eight counts of health care fraud (18 U.S.C. §§ 1347 and 2); (iii) two counts of aggravated identity theft (18 U.S.C. §§ 1028A and 2); and (iv) conspiring to unlawfully distribute controlled substances by using a registration number issued to another person (21 U.S.C. § 846). R. 226 at 1623-25. On February 6, 2026, Alzadon was sentenced to 60 months' imprisonment. R. 337 at 5792. He was also ordered to pay $812,881.09 in restitution and to forfeit $155,520 in proceeds derived from the health care fraud scheme. *Id.* at 5796; R. 328.

Citing his mother's deteriorating health and his role as her primary caretaker, Alzadon has requested—and the government has not objected to—multiple extensions of his report date. R. 376; R. 406; R. 424. The Court has granted those requests, and Alzadon's current report date is November 3, 2026. R. 377; R. 410; R. 425. In granting Alzadon's most recent extension request, the Court stated: "The Court, while sympathetic to Dr. Alzadon's circumstances, will not be inclined to grant further extensions." R. 425.

On October 6, 2026, Alzadon filed a motion to remain on bond pending appeal. R. 426. For the reasons set forth below, Alzadon's arguments for bond pending appeal are without merit. His grounds for appeal do not raise substantial questions of law or fact likely to result in a reversal, a new trial, a lower sentence, or no imprisonment. Additionally, Alzadon's mother's health—while unfortunate—does not warrant Alzadon's release pending appeal under 18 U.S.C. § 3145(c).

## LEGAL STANDARD

"The Bail Reform Act, 18 U.S.C. § 3143(b), creates a presumption against release pending appeal." *United States v. Chilingirian*, 280 F.3d 704, 709 (6th Cir. 2002). In rebutting this

presumption, the burden of proof is on the defendant. *United States v. Pollard*, 778 F.2d 1177, 1181-82 (6th Cir. 1982). Thus, Alzadon must show that his appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in reversal, a new trial, or a sentence that either does not include imprisonment or reduces the term of imprisonment below the expected duration of the appeal process. 18 U.S.C. § 3143(b)(1)(B).

In considering whether an appeal raises a substantial question of law or fact, a court first determines whether the question is "substantial" in the sense that it constitutes a "close question or one that could go either way." *Pollard*, 778 F.2d at 1182 (quoting *United States v. Powell*, 761 F.2d 1227, 1233-34 (8th Cir. 1985) (en banc)). "[M]ere identification of issues does not demonstrate that an appeal establishes a substantial question entitling the defendant to release pending appeal." *United States v. Moore*, 849 F.2d 1474 (6th Cir. 1988). If the court concludes that the question is in fact "substantial," it then must evaluate whether the question "is so integral to the merits of the conviction that it is more probable than not that reversal or a new trial will occur if the question is decided in the defendant's favor." *Pollard*, 778 F.2d at 1182 (internal quotations omitted).

Generally, an argument that would result in reversal of some, but not all, counts of conviction is insufficient "because if one count imposing imprisonment survives, the reason for allowing bail pending appeal, that a defendant should not be imprisoned under a legally erroneous sentence, disappears." *United States v. King*, 126 F.4th 440, 442 (6th Cir. 2025) (quoting *Powell*, 761 F.2d at 1233-34).

Under 18 U.S.C. § 3143(b)(2), a defendant found guilty of violating the Controlled Substances Act (21 U.S.C. § 801 et seq.) "shall … be detained." Nonetheless, under 18 U.S.C. § 3145(c), "[a] person subject to detention pursuant to [section 3143(b)(2)], and who meets the

conditions of release set forth in [section 3143(b)(1)], may be ordered released … if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate."

## ARGUMENT

Alzadon's motion fails because: (1) he does not raise substantial questions of law or fact[1]; and (2) he does not "clearly show[] … exceptional reasons" why his detention "would not be appropriate." 18 U.S.C. § 3145(c).

### I. Alzadon Does Not Raise Substantial Questions of Law or Fact

In his motion, Alzadon briefly notes that his pending Sixth Circuit appeal (R. 426-1) raises substantial questions. Alzadon incorporates the appeal in the instant motion, and he also incorporates by reference co-Defendant Michael Bregenzer's pending motion for bond pending appeal (R. 417). Alzadon states:

> Without fully reciting issues raised in both co-Defendant Bregenzer's Motion [R. 417], and the Defendant's [Sixth Circuit] Brief, the Defendant believes that the same are sufficient to establish a "substantial question" under the terms of 18 U.S.C. § 3143(b). In particular, in addition to those matters fully brief [sic] in relation to co-Defendant Bregenzer, the Defendant notes unique constitutional concerns related to defense witnesses as an issue raising a substantial question.

R. 426 at 6540.

In response, the government respectfully refers to its opposition to Bregenzer's motion for bond pending appeal (R. 419) and reiterates those arguments below.

[1] The government does not contend that Alzadon is a flight risk or a danger to the community.

### A. Alzadon's Arguments Regarding Defense Witness Testimony Do Not Raise a Substantial Question Likely to Result in Reversal or a New Trial

Alzadon joins Bregenzer's argument that he should remain on bond pending appeal because of the "close question" posed by potential testimony tied to two co-conspirators who did not testify at trial after invoking their Fifth Amendment rights against self-incrimination: Trouper Krueger and Kristi Elrod. R. 417 at 6314-6321; R. 426 at 6540; R. 426-1 at 6561-6567. Alzadon contends that the circumstances surrounding Krueger's and Elrod's decisions to invoke their Fifth Amendment privileges against self-incrimination raise a "substantial question" likely to result in reversal or a new trial. *See* R. 426 at 6540.

These issues have been litigated extensively before this Court. They are not "close" questions. As such, Alzadon cannot satisfy his burden and overcome the presumption against release pending appeal.

#### i. Krueger and Elrod Were Entitled to Invoke Their Fifth Amendment Rights

Krueger and Elrod faced criminal exposure and therefore were entitled to invoke their Fifth Amendment privilege against self-incrimination. Throughout the government's presentation of evidence at trial, Krueger and Elrod regularly came up as being involved in the charged conduct, including through witness testimony and multiple incriminating communications. *See* R. 298 at 5301 (collecting citations). Indeed, by Alzadon's own admission, both witnesses were discussed with "startling frequency throughout the Government's case," including over 200 references to each witness. R. 426-1 at 6562-6563. As the Court noted, "at the time the government raised its concerns regarding these witnesses testifying, the Court had already made findings under *United States v. Enright*, 579 F.2d 980 (6th Cir. 1978) that Krueger and Elrod were unindicted coconspirators." R. 320 at 5620 (citing R. 263 at 4381-4387).

Furthermore, at trial, the Court did not allow Krueger and Elrod to invoke their Fifth Amendment privileges "based solely on the[ir] say-so … that they might be incriminated if they testified in this case." R. 320 at 5622. Rather, the Court made this determination "after hearing all the evidence of the government's case-in-chief and finding that both Elrod and Krueger were unindicted coconspirators in a conspiracy for which it is undisputed the applicable statute of limitations had not run." *Id*. Furthermore, the Court appointed independent counsel for both Krueger and Elrod and directed the government to provide both with a packet of relevant materials to review. *Id*. at 5622-5623. Counsel for Krueger and Elrod reviewed the materials, conferred with their respective clients, and advised the Court that both would invoke their Fifth Amendment right against self-incrimination. *Id*. at 5623. Thus, both the Court and independent counsel separately determined that Elrod and Krueger had criminal exposure and therefore had a legitimate basis to invoke their Fifth Amendment rights.

Insofar as Alzadon is joining Bregenzer's challenge regarding Krueger's and Elrod's "blanket" invocation of their Fifth Amendment privileges (R. 417 at 6314-6315; R. 426-1 at 6567), Alzadon is wrong. A blanket assertion of the Fifth Amendment privilege against self-incrimination is entirely appropriate where the witness has a "clear entitlement" to claim the privilege. R. 320 at 5623 (citing multiple cases). As the Sixth Circuit has repeatedly confirmed, a trial court need not conduct a question-by-question inquiry where "reasonable cause" to invoke the privilege exists. *Id.* Here, based on the extensive record at trial, the Court had ample basis to determine that there was "reasonable cause" to invoke the privilege.

**ii. The Government Properly Raised These Issues Before This Court**

Not only did the government raise the "valid concern" that both Krueger and Elrod faced potential criminal liability, but the government also raised the fact that "Krueger was represented by attorney Anna Whites, who was also KAC's counsel." R. 320 at 5620-5621. Accordingly, "the

government raised an issue as to whether Whites had a conflict representing both KAC and Krueger." *Id*. at 5621. As the government previously explained (*see* R. 298 at 5299-5307), the government flagged the issue for the first time in a December 2024 filing (R. 117) and again at trial. The government took no position on the existence of a potential conflict, and the Court resolved the issue by asking Whites and accepting her determination.

Nonetheless, Alzadon continues to take issue with the timing of the government's conduct, alleging that the government waited until the close of its case-in-chief to stymie the Defendants' ability to call Krueger and Elrod as witnesses. R. 426-1 at 6564-6565.

This matter has been litigated extensively—the Court previously considered the parties' arguments and ruled in favor of the government. Factually, at the final pretrial conference, the government raised the issue of multiple defense witnesses that might require independent counsel before testifying. R. 297 at 5261. Legally, citing *Davis v. Straub*, 430 F.3d 281, 287 (6th Cir. 2005), this Court has explained that there is precedent for the government advising the court of a witness's Fifth Amendment considerations in the middle of trial and for the court to promptly appoint independent counsel to advise the witness. R. 320 at 5621-5622.

Alzadon does not cite any authority to support his apparent position that the government notifying a court of a witness's Fifth Amendment rights, without more, may amount to substantial interference with a witness's decision whether to testify and thus with the defendant's right to present a defense. As such, the Court should reject Alzadon's attempt to transform his unsupported assertions into a close question under the law.[2]

---

[2] Alzadon states that the "testimony of Elrod and Krueger would have been both relevant and material to [his] defense" (R. 426-1 at 6567), but other than mentioning that both witnesses were regularly referenced at trial, Alzadon points to no specific testimony that either would have provided that would have exonerated him.

### B. Alzadon's Arguments Regarding Sufficiency of the Evidence Do Not Raise Substantial Questions of Law or Fact

In his opening brief before the Sixth Circuit, Alzadon asserts that there was insufficient evidence for the jury to convict him. R. 426-1 at 6568-6570. His core argument is that "there was essentially no evidence that Dr. Alzadon was involved in the decision-making process for KAC." *Id.* at 6570. Of course, Alzadon raised these points in his post-trial motions under Rules 29 and 33. R. 272 at 5109-5114. This Court thoroughly analyzed these arguments and rejected them. R. 320 at 5632-5638. Among other things, the Court cited the overwhelming evidence presented at trial regarding Alzadon's participation in the charged crimes. This included patient records, text messages, billing data, and testimony from patients, former KAC employees, Kristy Berry, Dr. Cheryl McClain, and others. *Id*.

In short, there was substantial evidence against Alzadon to support the counts of conviction. The mere fact that Alzadon disagrees with the jury's (and the Court's) assessment of the evidence—and is appealing the same—does not upgrade his arguments into substantial questions of law under 18 U.S.C. § 3143.

### C. Any Objections Alzadon May Have Regarding the Jury Instructions Do Not Raise Substantial Questions of Law

Neither in his motion for bond pending appeal—nor in his Sixth Circuit appeal—does Alzadon raise any arguments regarding the health care fraud jury instructions, following the Sixth Circuit's decision in *United States v. Singh*, 147 F.4th 652 (6th Cir. 2025). However, insofar as Alzadon adopts Bregenzer's position on this issue, Alzadon is mistaken.

First, a challenge that will only affect a subset of a defendant's convictions cannot support his motion for bail pending appeal. *King*, 126 F.4 at 442 ("if one count imposing imprisonment survives . . . the reason for allowing bail pending appeal . . . disappears."); *see also Morison v. United States*, 486 U.S. 1306, 1306-07 (1988) (denying application for bond pending a certiorari

petition because "regardless of whether Morison has raised a 'substantial question' with respect to the propriety" of some of his convictions, he failed to do so with respect to all of the counts for which imprisonment was imposed). Here, any error in the health care fraud jury instructions does not affect Alzadon's conviction for conspiring to unlawfully distribute controlled substances (Count 14) and therefore, cannot support his motion for release pending appeal regardless of the ultimate disposition of his claim.

Second, Alzadon has waived any argument regarding jury instructions. In his brief before the Sixth Circuit, in a footnote, he states that, if Bregenzer should raise the issue and prevail, then Alzadon's conviction must be reversed as well. But the Sixth Circuit's case law "makes clear that '[i]t is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.'" *United States v. Persaud*, 866 F.3d 371, 385 (6th Cir. 2017). Such issues are "deemed waived." *Id*.

Third, even if Alzadon had not waived the issue, any error in the jury instructions was invited error. "Usually, if a defendant fails to object to the jury instructions at trial, and she or he jointly submitted the challenged instruction with the government to the district court, appellate review is precluded under the invited-error doctrine." *United States v. Howard*, 947 F.3d 936, 944-45 (6th Cir. 2020). Both the government and Alzadon requested Sixth Circuit Pattern Jury Instruction 10.05, defining health care fraud, and Alzadon did not object to the instruction at the charge conference. R. 174 at 1126, Alzadon's Proposed Jury Instructions; R. 266 at 4775:2-5 and 4777:16-4778:11.

Finally, even if the Sixth Circuit should decide to review a waived argument regarding an invited error, Alzadon cannot show a "reasonable probability that a properly instructed jury would have concluded that he did not know it was unlawful to knowingly execute a scheme" to defraud

Medicare and Medicaid. *See United States v. Clay*, 162 F.4th 757, 767 (6th Cir. 2025). For the same reasons that the Court concluded that there was sufficient evidence for the jury to convict Alzadon, there is likewise ample evidence that Alzadon knew it was unlawful to knowingly execute a scheme to defraud Medicare and Medicaid. Among other evidence, the Court cited Dr. McClain's testimony that, in September 2019, she told Alzadon "that billing for medical services provided by Dr. Alzadon under another doctor's name could be considered fraud." R. 320 at 5633 (citing R. 245 at 2057-2059). The Court also cited the fact that, in January 2021 (nearly 1.5 years after Dr. McClain confronted Alzadon), text messages between Alzadon and Berry reference the fact that Alzadon was seeing patients that were being billed under his father's name. R. 320 at 5633-5634 (citing Gov. Exs. 470-471).

Thus, even if Alzadon were challenging his conviction pursuant to the Sixth Circuit's ruling in *Singh*, because the evidence showed that Alzadon knew his conduct was unlawful, he would not prevail. He therefore fails to present a substantial question of law justifying release pending appeal.

## II. Alzadon Does Not Present "Exceptional Reasons" Warranting His Release

Alzadon devotes the bulk of his motion to arguing for release for "exceptional reasons," pursuant to 18 U.S.C. § 3145(c). R. 426 at 6541-6545.

Alzadon points to a purported "dearth of caselaw on the application of § 3145(c)," highlighting cases allowing for release during the COVID-19 pandemic and based on unique cultural grounds. *Id.* at 6542-6543. Alzadon argues that he is entitled to bond pending appeal "based upon the exceptional circumstances related to his 24-hour treatment of his ailing mother," noting that his training and experience as a physician have enabled him to provide specialized care to his mother, which has "likely extended his mother's life significantly." *Id.* at 6543-6544. Alzadon further contends that the absence of his care "would require his mother to immediately

be transferred to an in-patient facility … and at any such facility she would not be able to receive the one-on-one full-time care that she has been receiving from Dr. Alzadon." *Id.* at 6544.

As an initial matter, the government acknowledges that Alzadon's mother's health condition is both precarious and unfortunate. The government does not dispute that Alzadon has provided his mother with medical care and support. Indeed, to help ease the burden on Alzadon and his mother, the government has not opposed Alzadon's three requests to extend his report date.

However, the government agrees with this Court that it is time for Alzadon to serve his sentence and that no further delays are warranted. Moreover, contrary to Alzadon's assertion regarding the lack of relevant caselaw under 18 U.S.C. § 3145(c), multiple courts have considered—and denied—motions for bond pending appeal for "exceptional reasons," including where the defendant seeks to provide care for an ailing relative.

In *United States v. Cook*, 42 F. App'x 803, 804 (6th Cir. 2002), the Sixth Circuit ruled that "hardship to family and business associates" did not constitute "exceptional circumstances" under 18 U.S.C. § 3145(c).

In *United States v. Kudmani*, No. 3:13CR-00173-JHM, 2017 U.S. Dist. LEXIS 106849 (W.D. Ky. July 11, 2017), the defendant argued that he was "the primary caregiver for his wife who is suffering from irreversible dementia and is in rapid decline." *Id.* at *7. The court noted that "case law reflects that caring for ill family members has generally not been considered as an 'exceptional reason' within the meaning of § 3145(c)." *Id.* at *8 (citing *United States v. Bush*, No. 3:12-CR-140, 2013 U.S. Dist. LEXIS 104858, at **10-11 (E.D. Tenn. July 26, 2013) (caring for—or visiting—a relative whose death is near is not an "exceptional reason"); *United States v. Burnett*, 76 F. Supp. 2d 846, 849 (E.D. Tenn. 1999) (finding that defendant had not shown "exceptional reasons," even though she was "the primary care provider for her seventy-seven year old mother

and fifty-three year old brother, both of whom have a number of health problems and require assistance"; further noting that "incarceration regrettably inflicts family hardship on many, if not most, defendants who appear before this Court.")). The *Kudmani* court concluded that, "[w]hile it is unfortunate the Defendant finds himself and his family in a difficult situation, his wife's dementia and his removal as her primary caregiver does not amount to an exceptional reason under 18 U.S.C. § 3145(c) warranting his release pending appeal." 2017 U.S. Dist. LEXIS 106849, at *9.

Similarly, in *United States v. Reynolds*, No. 12-20843, 2013 U.S. Dist. LEXIS 125722 (E.D. Mich. Sep. 4, 2013), the district court held that the fact that (i) the defendant's mother had lupus and required more intensive care and (ii) the defendant's daughter had mental health issues and had attempted suicide, did not necessitate release pending appeal: "[w]hile unfortunate, hardships in being unable to assist or care for family members and interruptions to work and business relationships because of a defendant being incarcerated are not unique or exceptional." *Id.* at **37-38.

Finally, in *United States v. Kirk*, No. 2:25-CR-00132-DCLC-CRW, 2026 U.S. Dist. LEXIS 143490 (E.D. Tenn. June 29, 2026), the defendant argued for release pending sentencing to enable him to live with his grandmother who required "24-hour care due to health issues." *Id.* at *2. The district court denied the request, holding that "[p]ersonal reasons such as caring for family members or maintaining gainful employment are not considered 'exceptional.'" *Id.*[3]

[3] Alzadon's reliance on Section 1B1.13(b)(3)(C) of the U.S. Sentencing Guidelines is also misplaced. *See* R. 426 at 6544. That provision discusses the "incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent." However, that provision relates to a reduction in the term of imprisonment, not bond pending appeal. And Alzadon has already presented—and this Court considered—detailed evidence regarding his mother's condition in connection with sentencing. The fact remains that family conditions simply do not amount to "exceptional reasons" under 18 U.S.C. § 3145(c).

## CONCLUSION

For the foregoing reasons, this Court should deny Alzadon's Motion for Bond Pending Appeal.

Respectfully submitted,

JASON PARMAN
U.S. ATTORNEY, EASTERN DISTRICT OF KENTUCKY

COLIN M. MCDONALD
ASSISTANT ATTORNEY GENERAL
NATIONAL FRAUD ENFORCEMENT DIVISION

By: *s/ Sarah Edwards*
Sarah Edwards
Trial Attorney
U.S. Department of Justice
National Fraud Enforcement Division
Health Care Fraud Section

Abdus Samad Pardesi
Trial Attorney
U.S. Department of Justice
Criminal Division
White Collar and Corporate Enforcement Section

**CERTIFICATE OF SERVICE**

On October 19, 2026, I electronically filed the foregoing through the ECF system, which will send the notice of electronic filing to all counsel of record.

*/s/ Abdus Samad Pardesi*
Trial Attorney